Daniels, J.
The action has been brought upon a receiver’s bond for the value of property obtained and sold by *79 John Morrisey, as receiver of the firm of 0. H. Murray & Co. The order appointing the receiver was made on the 16th of December, 1869, and the bond which the defendants executed as sureties when the order was obtained, was made at the same time. This bond was in the penalty of $10,000 and was conditioned for the faithful performance by Morrisey of his duties as receiver. After its approval and before the summons in the action was served upon either of the defendants, Morrisey sold the property received by him for the sum of $25,000. The sale, however, was afterwards set aside, and so was his appointment as receiver, but the property itself was not recovered, and the relator as one of the parties interested in it, brought this-action to recover the amount mentioned in the bond.
By the evidence which he gave, as a witness upon the trial, it appeared that the business of the firm of Murray & Co., was that of dealing in and issuing lottery tickets and lottery policies, and the property which was received and sold by the receiver consisted of legislative grants, franchises and charters, commonly called and known as lottery-grants and franchises, derived under legislation, chiefly if' not exclusively, of the state of Kentucky. The purchases made by the relator were in writing. By that made on the 12th of November, 1867, Henry Wood sold, transferred and assigned to the relator, and three other associates, fifty one-hundredths of his right, title and interest, to a lottery grant- and franchise granted by the legislature of the state of Kentucky, with the rights, privileges, immunities and management thereto belonging, or in any wise appertaining to-such lottery grant. And it was covenanted in the agreement of sale that the relator and his associates should “have the sole and entire right to manage, control and draw-said lottery.” This sale took place in the city of New York. By another sale made to the relator on the 15th of March, 1869, he purchased a further interest from M. A. Littell, and this purchase was also made in the city of New York. In September, 1869, the relator purchased further shares in lottery grants, privileges and franchises from Zachariah B. Simmons, B. Wood and Z. E. Simmons, and that purchase is found to have been made by him as it probably was, in the city of New York.
These lottery grants, privileges and franchises were used in carrying on the lottery business in the city of New York, which has already been mentioned, and the object-of the purchases was to secure to the relator corresponding interests in that business, and to insure its continuance and transaction, in part at least for his benefit. And that the business was carried on in that manner under these grants and franchises, with his assent and participation *80 and for his benefit, was proved by himself as a witness upon the trial of the action.
_ The relator’s counsel has endeavored to maintain his right to recover upon the receiver’s bond, upon the fact that the lottery grants, or franchises, themselves were provided for and legalized by acts of the legislature of the state of Kentucky, and having been legally created there are entitled to the protection of the laws of this state, while they were owned by persons residing here. And so far as this position has been stated, if there was nothing further in the case, it might possibly be that this protection should he afforded to this species of property. But the relator did not come into court as the mere partial owner of these grants and franchises, but as a person who purchased them' in this state, to carry on the business of selling lottery tickets and lottery policies. The object of his acquisition of these rights was to continue and promote the success of that business. And that the law of this state, as it was in force at the time these purchases were made, will not permit to be done. For (by Revised Statutes, 6th ed., 924, § 63) it has been declared that “every grant, bargain, sale, conveyance, or transfer, of any real estate, or any goods, chattels, things in action, or any personal property, which shall hereafter be made in pursuance of any lottery not authorized by the laws of this state, or for the purpose of aiding and assisting in such lottery, game or other device to be determined by lot or chance, are hereby declared void and of no effect.” The purchases admitted to be made by the relator were clearly within the mischief intended to be corrected by the latter branch of this section of the statute, for they were made avowedly for the purpose of aiding and .assisting and carrying on the lottery business of Murray & Co. And for that reason the instruments which in terms professed to transfer the interests in the grants, or franchises to the relator were void and of no effect. This section of the statute is entirely plain, and it is the obvious duty of the court, as that has heretofore been done, to •carry the provision into effect, and thereby prevent illegal •enterprises of this description. Hull v. Ruggles, 1 N. Y. Sup. Court; affirmed 56 N. Y., 424.
In that case it was said that “the sale by the plaintiff to the defendant was to aid in carrying on an unlawful lottery, and was void. As the sale was unlawful and void, the contract of sale was the same and cannot be enforced. It is in violation of a penal and prohibitory statute, and the court cannot lend the aid of the law to carry it out and enforce it in favor of a party to it.” Id 428. The cases of Com. of Kentucky v. Bassford (6 Hill, 526), and People v. Noelke (94 N. Y., 137), have been urged upon the attention of the *81 court as sustaining the right of the relator to maintain this action. But they do not, for they arose under other provisions of the statute and have nothing whatever to do with the section which has been cited. The section absolutely avoids the conveyance, sale or transfer of all goods, chattels, personal property and things in action, made to aid and assist in carrying on a lottery, game or other device to be determined by lot or chance. And the sales under which the relator claims were clearly of this description. He accordingly acquired no interest whatever in these grants, or franchises, as property, entitling him to maintain an action either for being unlawfully deprived of their possession or for the disposition which was made of them by the receiver. It may be conceded under the proofs that the appointment of the receiver was a.mere device and fraud to despoil him and his associates of this lottery property; but that will not enable him to maintain his action as long as . this positive provision of the statute prevented him from acquiring any interest in such property, in contravention of its provisions, and, having no interest whatever in the property, he has no legal right to bring or maintain an action for its recovery.
But if he had, he should have joined the other obligees referred to in the bond, either as plaintiffs or defendants, in the-action, for it does not present a question of a common or joint interest of many persons, nor a case where the persons who might be made parties are very numerous, so much so as to make it impracticable to bring them all before the court. There was no more difficulty in bringing all the parties before the court in this action than there was in the action in which the receiver was appointed and the bond was given. The omission to bring in these parties was specially set forth in the defendant’s answer, and it was found as a fact by the court upon the trial.
It has been objected, as the complaint was dismissed, "that the case was not one for findings of fact and law; but this objection has no legal force, for in all cases tried by "the court by section 1010 of the Code of Civil Procedure, a decision in writing is required to be filed with the clerk, and by section 1022 that decision must state separately the facts found and the conclusions of law, and it must direct the judgment to be entered thereupon. The practice pursued in the action was precisely what the Code has directed should be done. And as the relator was not entitled to maintain the action, the judgment should be affirmed, with costs.
I concur, Brady, J.